*LESSEE OF GOFORTH v. N. LONGWORTH.    [129

In a case of sale of lands of decedent by executors or administrators, the record must show an order of sale by the court, or the sale is void.

THIS was an ejectment adjourned here for decision from Hamilton county. The plaintiff claimed as heir at law of Aaron Goforth, who died legally seized of the lot in controversy, being No. 161, in Cincinnati. The seizin of the ancestor and the heirship were admitted. The defendant claimed under an alleged sale and

conveyance, made by the administrators of A. Goforth, of the lot in question, for the payment of debts. In support of this claim he gave in evidence, a deed from the administrators, dated Janu· ary 26, 1814, which recited that the sale was made by the administrators, under an order of court. To sustain this deed, the defendant further gave in evidence an order of court, dated of August term, 1813, in these words: "Petition and motion made by the administrators of A. Goforth, deceased, for the sale of real estate. Account or statement exhibted to court, who appoint Joseph Carpenter, Ethan Stone, and Richard Fosdick, appraisers," etc.

An appraisement made by the persons named, of real estate, and returned to court, including the lot in dispute, was also given in evidence, which was dated December 11, 1813. An account of sales, as made by the administrators, dated ·December 15, 1813, was in proof, in which the lot 161 was set down as sold December 14, 1813. This account was marked filed as of April 14, 1814. No other order of court, in the premises, was given in evidence, except the one before quoted. The question submitted for decision was,. whether upon the proofs exhibited, the sale, by the administrators, was valid.

CASWELL and STARR, for the plaintiff.

N. WRIGHT, for defendant.

By the COURT:

It is now well settled that courts give a liberal construction to statutes authorizing sales of real estate by executors or administrators. Public policy requires that all reasonable *presumptions should be made in support of such sales, especially respecting matters *in pais*. The number of titles thus derived, and the too frequent inaccuracy of clerks and others concerned in effecting these sales, render this necessary. But where the statute is explicit and unambiguous, in its terms, the court is not authorized to dispense with the formalities and modes of proceeding prescribed, or to supply them by presumptions and constructions.

The sale, relied upon by the defendant, was made under the statute of February 10, 1810. Section 32 provides "that when it shall be made appear to the satisfaction of the court that it is necessary to sell real property for the discharge of debts, as specified

in the preceding section, they shall appoint three disinterested men to view the lands, tenements, or hereditaments, so to be sold, and return to court under oath, a statement of the value thereof, *after which the court shall direct* the executor or executors, administrator or administrators, to proceed to sell, either the whole or a part, as they may think proper, of such real estate, after giving notice," etc.

The provisions here cited require that certain acts shall be done by the court of common pleas, and these constitute the foundation upon which the sale of a deceased person's real estate by his personal representative must rest. That these acts were done by the court must be evidenced by the record of their proceedings. The law requires that the court shall appoint valuers, who shall value the estate, and make a return of the valuation, "*after which the court shall direct*" the whole or a part to be sold, "*as they may think proper.*" This act, to be performed by the court, is essentially of a judicial character. A judgment is to be made up and pronounced; and this judgment is the foundation of the administrator's or executor's power to sell. Were such a judgment, order, or direction produced, it would be correct to infer that it was rendered or made upon a proper state of facts. The appointment and return of the valuers, with other preliminary proceedings, might be inferred or presumed. But the judgment or direction stands upon a different principle. It can only exist as matter of record, and can in no other mode be proven.

No transcript of any such record is produced; nor anything more than the order appointing the valuers, which in *the [131 nature of things, preceded the direction, or order to sell; because between that appointment, and the final direction to sell, the valuers were to perform the duties required of them by law. The counsel, aware of the necessity of adducing record evidence of this order, or judgment, attempt to deduce it from the "*et cetera*" at the end of the order appointing valuers. But such an interpretation of the "*et cetera*," in the case before us, is wholly inadmissible. Lord Coke himself, whose commentary upon the "*et cetera*" of Littleton is a standing jest with the profession, never could have thought that matter subsequent, and that the final decision of the court in the case could be included in an "*et cetera*" attached to the incipient order in the proceedings.

The statutory provisions in respect to cases of sales of real es-

tate, by the personal representative, are intended to protect the interests of heirs and creditors, as well as that of purchasers. The power of the personal representative over the real estate of the deceased is derivative and limited. It is derived from the act of the court, in conformity to the law. The discretion of the court must be exercised and declared upon the subject, and, without this, the act of the administrator or executor is void, because based upon no legal foundation. It is a case of acting under a power where no power is conferred. The act must therefore be void. In this case there is the proper proof that valuers were appointed and made a return. These steps prepared the subject for the court to act upon finally. But there is no evidence that they did finally act upon it. On the contrary, there are facts stated that warrant a contrary conclusion. The appraisement is dated December 11, 1813, and the administrators report the sale as made the 14th of the same month. In this period of time it was impossible for the court to act, and then for the administrator to give the legal notice of sale. It seems, therefore, to be an almost necessary conclusion, that the administrators did not consider an order or direction to sell, founded upon the return of the valuers, as necessary to invest them with the power to effect a sale. We can not otherwise account for their appointing and advertising a sale, even before the valuation was made, and, of consequence, before any power to sell could be vested in them. They mistook their duty and their powers. We might as well attempt to 132] *sustain a sheriff's deed for land sold on execution where the pleadings were found, but no judgment, as to sustain the sale by the administrators, in this case. To divest the heirs of their estate, by the sale of the personal representative, that sale must be made in substantial compliance with the statute. This must appear on the record, or arise on a just implication from it. Here we have neither. The judgment must be for the plaintiff.